**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 23-cr-256 (APM)** |
| | **:** | |
| **MARK MOORE,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The Defendant was convicted at trial of five violent offenses arising from a string of violent robberies targeting service workers in the District of Columbia. During each robbery the defendant used a BB gun to threaten employees who were simply doing their job. The trial evidence showed that the defendant's conduct was deliberate, repeated and terrifying. The victims' testimony made clear that the robberies caused lasting trauma and terrorized the community. The Government requests that the Court sentence Mark Moore to 180 months of incarceration on Counts Two, Five, and Six and 120 months on Counts Three and Four to run concurrently to one another, followed by five years of supervised release.

**BACKGROUND**

During the Fall of 2022 the Defendant terrorized the D.C. and Virginia community, engaging in a robbery spree wherein he held employees at gunpoint and brutally robbed them and the establishments where they were working. The Defendant's reign of terror culminated in a chase where multiple law enforcement agencies had to pursue the Defendant across jurisdictions. The evidence at trial showed the Defendant's planning, deliberation, and utter disregard for the victims that he left in his wake.

On October 26, 2022, at approximately 10:13 a.m., the Defendant arrived at the McDonald's parking lot located at 1539 Pennsylvania Avenue, SE, Washington, D.C. Before

entering, he remained near the front entrance for several minutes, watching customers and waiting for an opportunity to act.   Shortly before 10:15 a.m., he entered the restaurant and lurked for about 15 minutes. The Defendant then followed a female employee into the bathroom, held her at gunpoint, and took her personal phone when she tried to use a translator application to communicate with him.   Despite the employee's pleas, the Defendant forced her out of the bathroom toward the cash register area.   Still armed and still in possession of the employee's phone, he then compelled another employee to fill a bag with money before leaving the store.

Approximately two weeks later, the Defendant struck again on November 9, 2022 at the 7-Eleven located at 1501 Independence Avenue, SE, Washington, District of Columbia.   As in the first robbery, the Defendant entered the store and remained inside waiting for an opportunity to rob.   The Defendant once again pulled out a gun and pointed it at a store employee while demanding that the employee put money in a bag.   This time, when the employee tried to conceal some of the money, the Defendant cursed at him.   At trial, the employee testified compellingly to the fear he felt during the commission of this crime.

Less than two weeks later, once again, the Defendant committed a robbery, this time targeting a Post Office in Washington, D.C. On November 22, 2022, at around 2:40 p.m., the Defendant entered the United States Postal Office located at 600 Pennsylvania Avenue, SE, Washington D.C armed with a gun.   One employee silently warned another that the Defendant had a gun.   That employee immediately fled in fear, falling as she ran to safety.

The Defendant then turned his attention to another employee who also attempted to escape. As she fell, the Defendant stood over her, pointed the handgun at her, and continued to threaten her while she pleaded for her life.   When the Defendant could not get traction with the first two

2

employees, he turned to a third, putting a gun to her back and forcing her to the register area.    The Defendant fled the Post Office on a distinctive-looking green bicycle.

The Defendant's reign of terror finally came to an end six days later when he robbed a CVS in Arlington, Virginia on November 28, 2022.   During that robbery, the Defendant took a bank note with a GPS tracker and again fled on the same distinctive green bicycle.   When law enforcement located the Defendant, they recovered a BB gun—consistent with the handgun seen in surveillance footage from the three D.C. robberies.   The clothing recovered from his girlfriend's apartment, together with DNA and fingerprint evidence, further connected the Defendant to the charged offenses.

## **ARGUMENT**

The Government requests that the Court sentence Mark Moore to 180 months of incarceration on Counts Two, Five, and Six and 120 months on Counts Three and Four to run concurrently to one another, followed by five years of supervised release. That sentence is just and necessary to reflect the seriousness of the defendant's conduct, protect the public, and provide adequate deterrence. In the fall of 2022, the defendant engaged in a violent robbery spree that terrorized service workers in Washington D.C., and Arlington, Virginia. He preyed on employees who were simply doing their jobs, threatened them with a BB gun, and left lasting trauma in his wake.   The Court's verdict confirms the seriousness of conduct.

Further, the Defendant has not shown genuine remorse. To the contrary, his testimony at trial with self-serving, incredible, and designed to minimize his responsibility despite overwhelming evidence of guilt. Rather than accept responsibility for the fear and harm he caused, the Defendant attempted to recast himself as blameless. That testimony and his post-trial lack of

3

remorse underscore the need for a sentence that reflects the gravity of his crimes, promotes respect for the law, protects the public and provides just punishment.    Both the Guidelines and sentencing factors pursuant to 18 U.S.C. § 3553(a) warrant the requested period of incarceration.

## I.    THE APPLICABLE SENTENCING GUIDELINES

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."    *United States v. Gall*, 552 U.S. 38, 49 (2007).    Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018).    The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors.    *Gall v. United States*, 552 U.S. 38, 49–50 (2007).    The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

Here, the Defendant was convicted of five counts relating to violent robberies and imitation firearm possession in connection therewith: (1) two counts of Interference with Commerce by Robbery, in violation of 18 U.S.C. § 195l(a); (2) one count of Robbery While Armed, in violation of 22 D.C.C. §§ 2801, 4502; (3) one Count of Possession of a Firearm During a Crime of Violence, in violation of 22 D.C.C. § 4504(b); and (4) one count of Armed Postal Robbery, in violation of 18 U.S.C. § 2114(a).    The Government agrees with the PSR writer that the applicable guidelines range for the federal offenses is 151 to 188 months and that the range for the DC Code offenses is 72-120 months' imprisonment.

**II.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

In addition to the applicable guideline range, the Court should consider the factors listed in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>>> (i) issued by the Sentencing Commission . . .; and
>>> (ii) that, . . . are in effect on the date the defendant is sentenced; . . .
>
> (5) any pertinent policy statement –
>> (A) issued by the Sentencing Commission . . . and
>> (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

**A.  The Nature and Circumstances of the Offense**

The offenses of conviction for the Defendant were violent, deliberate and predatory.    The Defendant did not only disrupt businesses—the McDonald's, 7-Eleven and the U.S. Postal Service—he terrorized vulnerable service workers who were simply doing their jobs and who suddenly found themselves at gunpoint.

5

The McDonald's robbery was especially cruel. The Defendant waited for an opportunity, isolated a female employee in the bathroom, and held her at gunpoint. She was particularly vulnerable: she had recently come to this country, did not speak English, and could not effectively communicate with him. The Defendant exploited that vulnerability by taking her phone- her only means of communication- and forcing her through the restaurant as she feared for her life. His conduct reflects planning, intimidation and a complete disregard for the safety and dignity of the victims he targeted.

The Defendant's conduct also shows why a substantial sentence is necessary. He did not act impulsively or out of panic. He watched, waited, isolated vulnerable employees, and used a gun to force compliance. The victims were not participants in any conflict; they were workers performing ordinary jobs when the Defendant turned their workplace into crime scenes. That repeated willingness to terrorize innocent employees for money weighs heavily towards a substantial sentence.

Finally, the manner of the Defendant's arrest further underscores the need for a substantial sentence.   After robbing a CVS in Arlington, VA, the Defendant fled from the police on his green bicycle.   He did not stop and submit to lawful authority; he got multiple law enforcement agencies involved in his apprehension and tried to hide from the police in a dense area of bushes.   When he was ultimately apprehended, law enforcement found a BB gun that looked consistent with the handgun he was seen brandishing on footage during the robberies.   From the beginning to end, the Defendant showed a determined commitment to avoiding accountability for his crimes. showed a determined commitment t

**B.  The Defendant's History and Characteristics**

The Defendant is 34 years old and is a long-term resident of the area.    *See generally*, PSR. According to the PSR, the Defendant has had a long history of antisocial behavior.    Most notably, in 2013, the Defendant entered a guilty plea in D.C. Superior Court in connection with his robbing of an Auntie Annie's Pretzel shop employee in Union Station. *Id.* ¶ 61.    According to the Proffer of Facts associated with that matter, at approximately 9:30 PM on January 18, 2013, the Defendant approached a store employee as she was walking with the shop's earnings for the day and demanded the money.    When she tried to get away from the danger that he posed, he became violent and forced her to the ground.    He even knocked an eyewitness to the ground in his bid to make off with the money.    The conduct of the 2013 robbery echoes forcefully to the conduct for which the Court must now sentence the Defendant—targeting service workers and getting violent with them in order to obtain money.    Moreover, while incarcerated for that offense, the Defendant incurred infractions for stealing and fighting with another person.    Once released on supervision, the Defendant reoffended with a Shoplifting and Unlawful Entry offense.    He also was discharged from Safe Haven Outreach Ministries for threatening a staff member, a staff member of an organization whose purpose was simply to help the Defendant.    Moreover, in the 2010s, the Defendant was convicted of multiple shoplifting-related offenses, like the charged conduct in that the Defendant exploited weaknesses in the stores to steal with impunity.    In July 2020, the Defendant even jumped down levels in the metro station in Virginia in order to evade police after stealing from a Giant Food Store.    For that most recent 2020 conviction, the Defendant was given an opportunity on release again.    And yet, despite that opportunity, the Defendant escalated his conduct to the instant spree.

Also notable are the two Civil Protection Orders filed by the Defendant's girlfriend against

him in connection with destruction of property and theft at his girlfriend's apartment.  PSR  ¶ 100-101.  In 2018 and 2019, according to the application for a protection order, the Defendant broke into her apartment and stole money orders and then checks.   Though a final Civil Protection Order was not put in place, a Temporary Protection Order was granted.   Then, in February 2022 and July 2022, a subsequent application for a Civil Protection Order recounted that the Defendant broke into his girlfriend's apartment, was belligerent around their children and was using drugs in front of them.   The court granted a Civil Protection Order in August 2022, just a couple of months before the Defendant went on the instant robbery spree.

The Defendant's criminal history reflects a sustained pattern of theft, robbery, flight and non-compliance with court supervision. He has prior convictions for robbery, petit larceny, shoplifting and habitual petit larceny. He has repeatedly violated supervision through positive drug tests, missed testing, absconding, new arrests, probation revocations, and warrants. His later conduct follows the same pattern: repeated thefts, unlawful entries, flight from police, fugitive matters, and protection order allegations involving break-ins and stolen property. Most significantly, even after the years of arrests, convictions, treatment opportunities, and supervision, he continued to escalate- culminating in the armed robbery conduct at issue here. His history shows that the prior leniency and court supervision have not deterred him or protected the public. On the contrary, his criminal conduct has only escalated. His conduct warrants a meaningful term of incarceration.

### C.  The Need for the Sentence Imposed

The requested sentence of 180 months incarceration in connection with the federal counts of conviction and 120 months in connection with the D.C. Code counts of conviction, to run

concurrent to one another is sufficient but no greater than necessary to meet the goals of sentencing.

A substantial sentence is necessary to reflect the seriousness of the Defendant's conduct, promote respect for the law, provide just punishment, and protect the public. The Defendant committed a series of armed robberies against vulnerable service workers, caused lasting fear and trauma, fled from law enforcement, and then offered self-serving and remorseless testimony at trial. His history further shows that he is not amenable to supervision and that shorter periods of incarceration have not deterred him.

A lesser sentence would fail to account for the violence, planning and repeated nature of the Defendant's conduct. It would also send the wrong message to others who might consider using firearms to terrorize workers and endanger the community. The requested sentence is therefore necessary to provide specific deterrence, general deterrence, and meaningful protection for the public.  Perhaps most importantly, it will keep our community safe from any further actions by the Defendant for more than a decade.  He has repeatedly shown that he is not amenable to supervision and that prior shorter periods of incarceration did not deter him from this kind of violent conduct.

### D. The Desire to Avoid Unwanted Sentence Disparities

Finally, one of the goals of the Guidelines is to avoid sentence disparities among similarly situated defendants. As set forth in the PSR, for similarly situated defendants with a Criminal History Category of V and an offense level of 31, with a primary guideline of  U.S.S.G. § 2KB3.1, the average incarceration length was 179 months' imprisonment and the median imprisonment length was 180 months' imprisonment. *See* PSR ¶ 176.

Importantly, in the instant case, the Defendant was not just convicted of one Hobbs Act Robbery, but two Hobbs Act Robberies and an Armed Postal Robbery.   Further aggravating the situation, he was also convicted of local charges of Armed Robbery of an Individual and Possession of a Firearm During a Crime of Violence.   These were violent offenses not just against establishments but against people—people who testified as to their believe that they were being threatened with a real gun and felt that their lives were in the balance.   In light of these factors, the Government's request for an aggregate 180 months of incarceration is not inconsistent with the Sentencing Commission's data. The requested sentence also is warranted by the seriousness of the offense, the need to protect the public, and the need to promote respect for the law.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court sentence Mark Moore to 180 months of incarceration on Counts Two, Five, and Six and 120 months on Counts Three and Four to run concurrently to one another, followed by five years of supervised release.

Respectfully Submitted,

Jeanine Ferris Pirro
United States Attorney

By:    */s/ Caelainn Carney*
CAELAINN CARNEY
Assistant United States Attorney
N.Y. Bar No. 5751672
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-714-6433
Email: caelainn.carney@usdoj.gov

10